**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| THE CONNECTICUT LIGHT & POWER COMPANY, | : CIVIL ACTION NO. :<br>: 01 CV 2373 (AWT) |
| Plaintiff, | : |
| VS. | : |
| NRG POWER MARKETING INC., | : |
| Defendant. | : August 23, 2004 |

**<u>SUPPLEMENTAL AFFIDAVIT OF ROBERT A. BAUMANN</u>**

I, Robert A. Baumann, hereby state the following based upon my personal knowledge:

1. I am employed by Northeast Utilities Service Company in Berlin, Connecticut as Director of Revenue Regulation and Load Resources.

2. I have been employed by Northeast Utilities for 22 years.

3. My responsibilities include, in part, filing various revenue requirement calculations of the Northeast Utilities operating companies, including The Connecticut Light & Power Company.

4. On March 1, 2003, two years and three months into the term of the Agreement between NRG and CL&P, New England's re-designed wholesale power market opened for business. The market was called Standard Market Design ("SMD") and included a new methodology for measuring the price of energy, losses, and congestion.

5. Prior to SMD, congestion charges were allocated or "socialized" by a formula tied to the assignment of Regional Network Service.  After SMD, congestion charges were no longer

socialized, but were quantified at various pricing nodes, i.e., measurement points, on New England's Pool Transmission Facilities ( PTF). The question then arose how, beginning on March 1, 2003, the suppliers, Duke, Select, and NRG should be allocated their appropriate share of congestion costs under SMD.

6. The subject matter of the Letter Agreements with Select and Duke was not whether they were responsible for congestion charges, but rather, after March 1, 2003 at what node or measuring point on the PTF (delivery point) they would henceforward be obligated to pay for congestion, energy and losses. CL&P and the suppliers argued for different nodes, and the issue was ultimately resolved in a settlement that was approved by the Federal Energy Regulatory Commission (Docket No. EL03-135 dated June 28, 2004).

7. In April, 2003 CL&P filed with the Connecticut DPUC its "Application … Concerning Recovery of SMD-Related Costs for March 1, 2003 through December 31, 2003." Those SMD-related costs resulted from the locational marginal pricing differential between delivery points on the PTF.

8. There is nothing in the Connecticut DPUC proceeding nor any evidence cited by NRG which argues that SMD in any way changed suppliers' obligation to pay for congestion.

9. Select and Duke, CL&P's suppliers in addition to NRG, continued to pay congestion charges for the entire three year term of their agreements.